UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

RANDY SCOTT WIECKHORST,

    Plaintiff,    Case No. 1:10-cv-204

v.             Honorable Janet T. Neff

HARRIET SQUIRE et al.,

    Defendants.

_____/

## **OPINION**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Grubaugh and McKee. The Court will serve the complaint against Defendants Squire, Holmes, Karp, Stieve and Hammond.

**Discussion**

I.      Factual allegations

Plaintiff Randy Scott Wieckhorst presently is incarcerated at the Bellamy Creek Correctional Facility (IBC). He sues Prison Health Service Doctor Harriet Squire, Chief Medical Officer Dr. Jeffrey Stieve, and the following IBC personnel: Doctors Scott Holmes and Valorie Hammond, Warden Ken McKee, Health Unit Manager Ann Karp, and Nurse Supervisor Terry Grubaugh.

Plaintiff alleges that he injured his back in May 2007, while he was housed at the Muskegon Correctional Facility. After months of treatment and x-rays, Plaintiff finally was given an MRI on September 23, 2008. After the MRI, Plaintiff was referred to a specialist, and he was seen at Hackley Hospital by Dr. Marquart on October 15, 2008. Marquart recommended surgery, and surgery was scheduled for March 2009. While he was waiting for the surgery, Plaintiff was taken to the hospital because of swelling in his leg. He was diagnosed with cellulitis, and the surgery was postponed until he healed.

While he was recovering, Plaintiff was transferred to IBC. His leg was better after a month, and he asked to see the doctor about his back. Plaintiff saw Defendant Dr. Holmes on 7/1/09, and he asked to have his back surgery rescheduled. Defendant Holmes told him that he did not need surgery and that his back would get better with time. Holmes also told Plaintiff that Prison Health Services would not pay for the surgery. Plaintiff was directed to continue his exercises.

Plaintiff continued to complain about back pain and saw the doctor several more times. He explained that his back was not getting better, that the exercises were not helping, and

that he was having trouble controlling his urine. The doctor again told him that Prison Health Services would not pay for the surgery.

Following additional complaints, Plaintiff was called to the medical department and met with Defendant Hammond. She told him that he had a mild disc problem and that it would get better with time. When he explained that the problem had continued for over two years without improvement, Hammond told him to continue his exercises and discontinued his pain medication.

Plaintiff wrote a grievance against Defendants Holmes and Hammond, which was denied at all steps. When he met with the nurse supervisor about the grievance, she told him that his being seen by the doctor was sufficient, that nothing else could be done, and that he should just deal with the pain. Plaintiff then met with Defendant Health Unit Manager Karp. She advised him to be careful what he wished for because surgery did not always come out well. She again told him that the new health care provider was not going to pay for surgery and that Defendant Holmes knew how to treat his problem.

Plaintiff again met with Defendant Dr. Holmes, explaining that his back caused serious pain and numerous physical problems: his lower leg, buttocks and half of his foot were numb; he could not bend over, sit, stand or walk without serious pain; he was having trouble controlling his urine; and he could not feel when he had a bowel movement. Defendant Holmes told Plaintiff that he would try to get the surgery re-approved.

Plaintiff also twice wrote Defendant Warden McKee and asked him to look into the matter. McKee responded both times that he did not address medical issues. On October 14, 2009, Defendant Hammond called Plaintiff to health care and informed him that Defendant Holmes had requested that Prison Health Services perform the surgery, but that Defendant Dr. Squire had turned

that he was having trouble controlling his urine. The doctor again told him that Prison Health Services would not pay for the surgery.

Following additional complaints, Plaintiff was called to the medical department and met with Defendant Hammond. She told him that he had a mild disc problem and that it would get better with time. When he explained that the problem had continued for over two years without improvement, Hammond told him to continue his exercises and discontinued his pain medication.

Plaintiff wrote a grievance against Defendants Holmes and Hammond, which was denied at all steps. When he met with the nurse supervisor about the grievance, she told him that his being seen by the doctor was sufficient, that nothing else could be done, and that he should just deal with the pain. Plaintiff then met with Defendant Health Unit Manager Karp. She advised him to be careful what he wished for because surgery did not always come out well. She again told him that the new health care provider was not going to pay for surgery and that Defendant Holmes knew how to treat his problem.

Plaintiff again met with Defendant Dr. Holmes, explaining that his back caused serious pain and numerous physical problems: his lower leg, buttocks and half of his foot were numb; he could not bend over, sit, stand or walk without serious pain; he was having trouble controlling his urine; and he could not feel when he had a bowel movement. Defendant Holmes told Plaintiff that he would try to get the surgery re-approved.

Plaintiff also twice wrote Defendant Warden McKee and asked him to look into the matter. McKee responded both times that he did not address medical issues. On October 14, 2009, Defendant Hammond called Plaintiff to health care and informed him that Defendant Holmes had requested that Prison Health Services perform the surgery, but that Defendant Dr. Squire had turned

down the request and suggested an alternative treatment plan. Plaintiff filed a grievance against Defendant Squire, which was on appeal to Step III.

> II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff names Defendant Grubaugh in his complaint, but he fails to make any specific allegations against her. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 200 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails even to mention Defendant Grubaugh in the body of his complaint. His

allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff's only allegation against Defendant Warden McKee is that he failed to "look into th[e] matter" when Plaintiff asked him to do so. (Compl., docket #1 at 7.) Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.[1] *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant McKee engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against Defendant McKee.

---

[1] The Court notes that it is not clear whether any other Defendant is a "subordinate" to McKee with respect to medical care. *See* MICH. DEP'T OF CORR., Policy Directive 03.04.100, ¶ J (providing that the coordination and monitoring of all prisoner health care is the responsibility of the Bureau of Health Care Services, not the Warden of an institution). Plaintiff therefore may not have accurately alleged even a claim of vicarious liability against McKee. Nevertheless, assuming McKee has any such general oversight responsibility, allegations of vicarious liability are insufficient to state a claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Grubaugh and McKee will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Squire, Holmes, Karp, Stieve and Hammond.

An Order consistent with this Opinion will be entered.


Dated:  March 17, 2010                     /s/ Janet T. Neff
                                           Janet T. Neff
                                           United States District Judge